**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ANDREW FREE,

               Plaintiff,

   v.

FEDERAL BUREAU OF PRISONS; U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT, Defendants.

Case No. 1:26-cv-24026

**COMPLAINT FOR INJUNCTIVE
RELIEF AND DECLARATORY
RELIEF**

## Introduction and Background

1.     This is an action under the Freedom of Information Act (the "FOIA" or the "Act"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, to obtain improperly withheld agency records concerning Johnny Noviello's death while in U.S. Immigration and Customs Enforcement (ICE) custody at the Bureau of Prisons' (BOP) Federal Detention Center Miami and records pertaining to the federal government's response to Mr. Noviello's death. Through multiple FOIA requests described herein, Plaintiff sought agency records from Defendants, the BOP and ICE.

2.     Defendant BOP failed to make a determination for Plaintiff's FOIA request, as required by law, and failed to adequately search for and respond to Plaintiff's FOIA request, in violation of the Act.

3.     Defendant ICE improperly withheld the requested records by improperly applying a blanket exemption from release under 5 U.S.C. § 552(b)(7)(A) and subsequently failing to update the determination as new information emerged.

1

4.      Plaintiff Andrew Free ("Free") seeks injunctive and declaratory relief requiring Defendants to immediately process and release all reasonably segrebable non-exempt portions of the requested records.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). Plaintiff's request for injunctive relief is properly subject to this Court's subject-matter jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(F) and 28 U.S.C. §§ 1331, 2201(a), and 2202.

6.      Venue is proper within this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(b)(1), (b)(2), and (e)(1).

7.      Plaintiff has exhausted all administrative remedies in connection with its FOIA requests, as detailed below.

8.      Because Plaintiff brings this action after constructively or actually exhausting administrative remedies, this Court's jurisdiction is based on 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552(a)(6)(C)(i).

9.      Congress passed the Freedom of Information Act, 5 U.S.C. § 552, in 1966 "to establish a general philosophy of full agency disclosure," and "to assure the availability of Government information necessary to an informed electorate."[1]

10.     The statute provides that, subject to certain enumerated exemptions for classified documents, agency personnel and medical files, confidential financial

---

[1] S. Rep. No. 89–813, at 3 (1965); H.R. Rep. No. 89–1497, at 12 (1966), 1966 U.S.C.C.A.N. 2418, 2429.

information, and the like,[2] federal agencies generally must make their internal records available to the public upon request.[3]

11.     As the Supreme Court has recognized, FOIA's disclosure regime shines a light on government operations "to check against corruption and to hold the governors accountable to the governed."[4]

## PARTIES

12.     Plaintiff Free is a freelance investigative journalist, researcher, lawyer, and organizer who writes and publishes edited stories[5] and contributes his FOIA research to reports about deaths in ICE custody and the conditions that produce them.[6] Plaintiff also investigates and reports on law enforcement abuse and corruption issues.[7] He publishes a regular newsletter informing the public about

---

[2] 5 U.S.C. §§ 552(b)(1)-(9).

[3] *Id.* § 552(a)(3)(A).

[4] *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).

[5] *See generally*, Andrew Free, Muck Rack (last visited June 1, 2026), available at https://muckrack.com/andrew-free.

[6] *See, e.g.*, ACLU, AM. OVERSIGHT, & PHYSICIANS FOR HUM. RTS., DEADLY FAILURES, PREVENTABLE DEATHS IN U.S. IMMIGRATION DETENTION 16 (2024) https://assets.aclu.org/live/uploads/2024/06/2024-07-01-ICE-Detainee-Deaths.pdf.

[7] *See, e.g.*, Andrew Free, *Trump's Deleted Police Misconduct Database Was Full of Prison and Border Incidents*, THE APPEAL (Feb. 27, 2025), https://theappeal.org/nlead-trumps-deleted-police-misconduct-database-full-of-prison-and-border/; Timothy Pratt & Andrew Free, *"Duped: How one Atlanta Cop Secretly Shilled For Police Tech*, THE INTERCEPT (Sept. 2, 2025), https://theintercept.com/2025/09/02/atlanta-seattle-police-axon-fusus-surveillance/; Andrew Free & Matt Scott, *Senior APD official failed to disclose financial interest in police tech company, ethics probe finds*, ACPC (June 26, 2025),

deaths in DHS custody and the government's transparency practices[8] and is

regularly cited or quoted in media outlets covering immigration detention issues.[9]

---

https://atlpresscollective.com/2025/06/26/ethics-probe-freeman-fusus-conflict-of-interest/.

[8] *See* Andrew Free, Detention Kills (last updated May 22, 2026) available at www.detentionkills.substack.com.

[9] *See, e.g.,* Elizabeth Weill-Greenberg, *GEO Group CEO Calls Lawsuits Against ICE Detention Facilities "Unwarranted" and "Unconstitutional,"* THE APPEAL (May 8, 2026), https://theappeal.org/geo-group-ice-lawsuits-unconstitutiona/; Douglas MacMillian et al., *Internal ICE records reveal widespread use of force in detention centers*, WASH. POST (May 4, 2026), https://www.washingtonpost.com/business/2026/05/04/ice-detention-centers-force/; José Olivares, *Cuban immigrant dies in Georgia detention center, ICE tells Congress*, THE GUARDIAN (May 1, 2026), https://www.theguardian.com/us-news/2026/may/01/georgia-ice-detention-death-cuban-immigrant; Press Release, Physicians for Human Rights, The 18th Death – and Fifth Death Attributed to Suicide – in ICE Custody this Year Spotlights Harms of Solitary Confinement, (May 1, 2026), https://phr.org/news/the-18th-death-and-fifth-death-by-suicide-in-ice-custody-this-year-spotlights-harms-of-solitary-confinement-phr/;  Jazmine Ulloa et al., *Deaths in ICE Custody Are Growing. 'They Let Him Rot in There.'*, N.Y. TIMES (Mar. 29, 2026), https://www.nytimes.com/2026/03/29/us/ice-detention-deaths-immigrants.html?unlocked_article_code=1.XFA.Cln2.8qdgNERlxZ7o&smid=url-share; Lomi Kriel & Colleen Deguzman, *Six Deaths in six weeks: What to know about ICE detentions in Texas*, THE TEXAS TRIBUNE (Feb. 19, 2026), https://www.texastribune.org/2026/02/19/ice-detention-deaths-texas-east-montana-dilley-campos/; Brett Wilkins, *Private Prison firm GEO GROUP Reports Record $254 Million Profit After New ICE Contracts*, COMMON DREAMS (Feb. 12, 2026), https://www.commondreams.org/news/geo-group-ice-profits; Douglas MacMillian, *Medical examiner likely to classify death of ICE detainee as homicide, recorded call says*, WASH. POST (Jan. 15, 2026), https://www.washingtonpost.com/immigration/2026/01/15/ice-detention-death-homicide/; Isabel Del Mastro et. al, *ICE Inspections Plummeted as Detentions Soared in 2025*, POGO INVESTIGATES (Jan. 12, 2026), https://www.pogo.org/investigates/ice-inspections-plummeted-as-detentions-soared-in-2025; Rachel Uranga, *Immigrants decry conditions at former prison, ICE's largest detention center in California*, L.A. TIMES (Sept. 29, 2025), https://www.latimes.com/california/story/2025-09-29/detainees-protest-at-californias-largest-and-newest-immigration-detention-center; Emma Goldberg, *"People are Losing Hope" Inside ICE Detention Centers*, N.Y. TIMES (Sept. 16, 2025),

Federal FOIA agencies have repeatedly identified Plaintiff as a representative of the news media and a filer of "significant FOIA requests" since at least 2022.[10]

14.     Plaintiff's reporting, research, and scholarship rely on government records as an authoritative primary source for the official facts for his reporting on in-custody deaths.[11]

14.     Defendant ICE is an agency component of the U.S. Department of Homeland Security. ICE is the principal investigative arm of DHS and is charged with criminal and civil enforcement of the immigration laws in the U.S. interior. Among ICE's primary duties are investigations of persons suspected of having violated the immigration laws and the apprehension, detention, and removal of noncitizens who are unlawfully present in the United States.

---

https://www.nytimes.com/2025/09/16/health/ice-homeland-security-immigration-detention.html.

[10] *See, e.g.*, Weekly FOIA Report for Mar. 31, 2025, U.S. Department of Homeland Security at 8, 70, 130, and 164, available at https://www.dhs.gov/sites/default/files/2025-07/25_0731_PRIV_Chief_FOIA_Officers_Weekly_Report_March_31_25_to_June_30_25.pdf (DHS began affirmatively publishing these Reports, which Free exposed the existence of through a prior FOIA request, pursuant to 5 U.S.C. 552(a)(2) following several prior releases to Free in response to his FOIA requests. *See* https://www.muckrock.com/foi/united-states-of-america-10/dhs-significant-foia-activity-190417/).

[11] *See* Andrew Beale & Ethan Corey, *UCLA Law Behind Bars Data Project Unveils New Category of Data: Deaths in ICE Custody*, UCLA L. Blog (Mar. 1, 2026), https://uclaprisondata.org/blog/ucla-law-behind-bars-data-project-unveils-new-category-of-data-deaths-in-ice-custody.

15.     Defendant ICE is an agency within the meaning of 5 U.S.C. § 551(1). ICE has possession, custody, and control of records responsive to Plaintiff's FOIA requests.

16.     Because ICE ceased affirmatively disclosing all detainee death reviews that it previously released as a matter of course in February 2017, Free and others have been forced to repeatedly file FOIA requests in order to even gain access to the official story of the circumstances surrounding deaths in custody.[12]

---

[12] *See, e.g.*, *Mami Chelo et al. v. U.S. Immigr. & Customs Enf't*, 26-cv-637 (S.D.N.Y. 2026); *Asian Americans Advancing Justice-Atlanta v. U.S. Immigr. & Customs Enf't*, 1:25-cv-00784 (N.D. Ga. 2025); *Free v. Immigr. & Customs Enf't*, 3:25-cv-00392 (W.D. Pa. 2025); *Mami Chelo v. Immigr. & Customs Enf't*, 1:25-cv-02546-PAE (S.D.N.Y. 2025) (Plaintiff files suit seeking records regarding noncitizen death in custody); *Am. Civil Liberties Union of Penn. v. Immigr. & Customs Enf't*, 2:24-cv-05675 (E.D. Pa. 2024) (Plaintiff files suit for ICE records regarding noncitizen death in Custody); *Rocky Mountain Immigr. Advocacy Network v. Immigr. & Customs Enf't*, 1:23-cv-02359 (D. Colo. 2023) (Plaintiff files suit to obtain records for two noncitizen deaths in custody); *Transgender L. Ctr. v. Immigr. & Customs Enf't,* 46 F.4th 771 (9th Cir. 2022); *Innovation L. Lab v. Immigr. & Customs Enf't*, 2:22-cv-00443 (D.N.M. 2022) (Plaintiff filed suit to obtain records regarding conditions in detention); *Refugee and Immigr. Center v. Immigr. & Customs Enf't*, 5:22-cv-00171 (W.D. Tex. 2022) (Plaintiff files FOIA lawsuit for disclosure of noncitizen suicide at Karnes detention center); *Buzzfeed v. Immigr. & Customs Enf't*, 610 F.Supp.3d 139 (C.D. Cal. 2022) (Plaintiff forced to file lawsuit to obtain DHS records in 2019); *Chaverra v. Immigr. & Customs Enf't*, 18-289-JEB (D.D.C. 2018) (Plaintiff forced to file suit after ICE failed to produce records); *Am. Civil Liberties Union of Colorado v. Immigr. & Customs Enf't*, 1:19-cv-01036 (D. Colo. 2019) (Plaintiff filed suit to obtain records of noncitizen's death in custody); *Leopold v. Immigr. & Customs Enf't*, 1:18-cv-02415 (D.D.C. 2018) (Plaintiff files suit to obtain records related to agency enforcement actions against noncitizens resulting in detention); *Owen v. Immigr. & Customs Enf't*, 2:22-cv-0050 (C.D. Cal. 2022) (Plaintiff sues seeking records regarding noncitizen death in detention); *Transgender L. Center v. Immigr. & Customs Enf't*, 1:21-cv-02155 (D.D.C. 2021) (Suit seeking to compel production of records regarding treatment of transgender people in DHS custody).

6

17.    Since 2019, Plaintiff has submitted over 300 FOIA requests to DHS and its agency components.

18.    During this period, ICE has consistently failed to uphold its statutory obligations as to Plaintiff Free's requests, forcing Plaintiff to repeatedly litigate in order to derive meaningful information in a timely manner.

19.    Free notified ICE, its counsel, and DHS of the agency's unlawful pattern and practice of violating FOIA in writing on August 13, 2021, of several serial FOIA violations observed across multiple requests, indicating a pattern and practice of FOIA violations.[13]

20.    After Free's notification, multiple courts have concluded that ICE has an unlawful pattern and practice of failing to comply with FOIA.[14]

21.    Defendant BOP is an agency component of the U.S. Department of Justice. The BOP is a law enforcement agency responsible for the care and custody of federal prisoners and allows ICE to transfer non-citizens under ICE custody to federal prisons.[15]

---

[13] *See* R. Andrew Free, *ICE's Pattern and Practice of Violating the Freedom of Information Act,* Detention Kills, (Aug. 13, 2021) available at https://cdn.muckrock.com/outbound_request_attachments/ImmCivilRights/81848/2021_8_12_FOIA_PP_Letter_-_ICE_.pdf.

[14] *See, e.g.*, *Owen v. Immigr. & Customs Enf't*, 2:22-cv-0050 (C.D. Cal. 2022); *Nightingale v. U.S. Citizenship & Immigr, Services, et al.*, 507 F.Supp.3d 1193 (N.D. Cal. 2020); *Stevens v. Immigr. & Customs Enf't*, 432 F.Supp.3d 752 (N.D. Ill. 2020).

[15] *See, e.g.*, Michael R. Sisak, *Federal prisons being used to detain people arrested in Trump's immigration crackdown*, A.P. (Feb. 7, 2025), https://apnews.com/article/immigration-federal-prisons-trump-25d676a6ebbff139ae04a75cd91be7e8.

22.     Defendant BOP is an agency within the meaning of 5 U.S.C. § 551(1). The BOP has possession, custody, and control of records responsive to Plaintiff's FOIA requests.

## FACTS

### Mr. Noviello's death at FDC Miami

23.     According to ICE's public Detainee Death Report for Mr. Noviello, on June 23, 2025, Mr. Noviello was found unresponsive by BOP FDC.[16] Facility medical staff arrived on the scene approximately seven minutes later and began administering CPR as well as an Automated External Defibrillator (AED) and called 911. The City of Miami Fire Rescue Department responded to the 911 call and took over life-saving measures, ultimately declaring Mr. Noviello's death at 1:36 p.m.[17]

24.     According to an autopsy report, Mr. Noviello died of renal failure and idiopathic calcium oxidate nephropathy, which is a kidney disorder. It may be

---

[16] The Canadian newspaper outlet Globe and Mail reported that a Miami-Dade Fire Rescue incident report noted "reddish discoloration around [Mr. Noviello's] ankles, hips, and wrists," which suggested to two forensic pathologists that "Mr. Noviello had been dead for a period of time before being found." *See* Kathryn Blaze Baum et al., *Autopsy of Canadian in ICE custody indicates his death was preventable, experts say*, THE GLOBE & MAIL (Feb. 10, 2026), https://www.theglobeandmail.com/canada/article-johnny-noviello-ice-custody-death-preventable-autopsy-experts/.

[17] *See* ICE DETAINEE DEATH REPORT: NOVIELLO, JOHNNY, https://www.ice.gov/doclib/foia/reports/ddr_NOVIELLOJohnny.pdf.

diagnosed by the presence of extremely painful kidney stones or "elevated levels of serum creatine (Cr) in a routine blood panel."[18]

25.  ICE's public death report for Mr. Noviello did not indicate a cause of death or mention any kidney issues.[19] It does, however, note that on Mr. Noviello's second day at FDC Miami, he presented with "normal vitals except for elevated heart rate and abnormal blood pressure." The death report also revealed two instances in which labs were ordered for Mr. Noviello, first on May 20th and then again on June 9th, after a behavioral health staffer intervened, noting Mr. Noviello's "poor personal hygiene" and that he had not been eating regularly. The report does not specify the results of Mr. Noviello's labs and whether his blood tested positive for elevated levels of serum creatine.[20]

26.  On February 10, 2026, the Canadian newspaper Globe and Mail reported that expert review by six kidney specialists of Mr. Noviello's autopsy indicated that his death due to kidney failure was preventable.[21] The experts noted

---

[18] *See* Andrew Free, *Cause and Manner*, DETENTION KILLS SUBSTACK (Jan. 30, 2026), https://detentionkills.substack.com/p/cause-and-manner.

[19] *See id.*; ICE DETAINEE DEATH REPORT: NOVIELLO, JOHNNY, https://www.ice.gov/doclib/foia/reports/ddr_NOVIELLOJohnny.pdf.

[20] ICE DETAINEE DEATH REPORT: NOVIELLO, JOHNNY, https://www.ice.gov/doclib/foia/reports/ddr_NOVIELLOJohnny.pdf.

[21] Four of the six specialists opined that "extensive deposit of calcium oxalate crystals" in Mr. Noviello's kidney was likely due to ingesting ethylene glycol, "a key ingredient in chemical solutions such as antifreeze," while two other specialists suggested that Mr. Noviello could have had "an undiagnosed condition in his liver or digestive system that caused excess oxalate to accumulate, which could have been exacerbated by severe dehydration in detention." *See* Kathryn Blaze Baum et al., *Autopsy of Canadian in ICE custody indicates his death was preventable, experts*

that regardless of what triggered Mr. Noviello's kidney failure, the failure "would have prompted symptoms of illness in the hours or days prior to his death" which "rais[es] questions about how closely Mr. Noviello was monitored at the Federal Detention Center Miami."[22]

27.    The article further noted that while the lab work Mr. Noviello received twice in detention "could provide important information about whether Mr. Noviello did, in fact, have an underlying condition" but that "the results of those analyses are not included in the autopsy report."[23]

28.    Additionally, Mr. Noviello's family received a record originating from the Department of Justice's Office of Inspector General of a complaint form filed by a medic against the Bureau of Prisons concerning Mr. Noviello's death. The complaint form states:

> In a referral of Incident received by the MIA on August 22, 2025, the Complainant alleges that a Local Multi-Level Mortality Review for the death of inmate Johnny Noviello was conducted after [(b)(6), (b)(7) redaction] was contacted to evaluate inmate Noviello due to his appearance of dizziness and instability. The complainant states that

_say_, THE GLOBE & MAIL (Feb. 10, 2026), https://www.theglobeandmail.com/canada/article-johnny-noviello-ice-custody-death-preventable-autopsy-experts/.

Free also obtained Mr. Noviello's Autopsy Report and related documents created by the Miami-Dade County Medical Examiner Department, available here: https://www.documentcloud.org/documents/28179909-2025-01808-histo/ and here: https://www.documentcloud.org/documents/28179908-autopsy/.

[22] _See_ Kathryn Blaze Baum et al., _Autopsy of Canadian in ICE custody indicates his death was preventable, experts say_, THE GLOBE & MAIL (Feb. 10, 2026), https://www.theglobeandmail.com/canada/article-johnny-noviello-ice-custody-death-preventable-autopsy-experts/.

[23] _Id._

[(b)(6) redaction] did not document the interaction she had with inmate Noviello and had no clear assessment or treatment plan for the inmate before his cardiac arrest.

**ICE's Death Policy**

29.     Under ICE's own policy directives, when a non-citizen dies in ICE custody, a cascade of notifications and investigations commences. This includes the Detainee Death Report performed by ICE Enforcement Removal Operations (ERO). Separately, ICE's Office of Professional Responsibility (OPR) also performs a Detainee Death Review.[24]

30.     ICE publicly released Mr. Noviello's Death Report performed by ICE ERO. The report consisted of a two-page summary regarding Mr. Noviello's death in ICE custody at FDC Miami.[25]

31.     ICE has not publicly released OPR's Death Review of Mr. Noviello's death.[26]

---

[24] *See* ICE DIRECTIVE 11003.6: NOTIFICATION, REVIEW, AND REPORTING REQUIREMENTS FOR DETAINEE DEATHS, https://www.ice.gov/doclib/foia/policy/11003-6.pdf.

[25] ICE DETAINEE DEATH REPORT: NOVIELLO, JOHNNY, https://www.ice.gov/doclib/foia/reports/ddr_NOVIELLOJohnny.pdf.

[26] Since Mr. Noviello's death at Miami FDC, another immigrant, Aled Damien Carbonell-Betancourt, died on April 12, 2026, while under ICE custody at Miami FDC. The agency has only published a press release of Mr. Carbonell-Betancourt's death and has not released the Death Report conducted by ICE ERO nor OPR's Death Review findings. *See ICE criminal illegal alien detainee from Cuba passes away in Miami*, ICE (Apr. 16, 2026), https://www.ice.gov/news/releases/ice-criminal-illegal-alien-detainee-cuba-passes-away-miami.

32.     Because ICE ceased affirmatively disclosing detainee death reviews as a matter of course in February 2017, Plaintiff and others have been forced to file FOIA requests again and again in order to even gain access to the official story of the circumstances surrounding deaths in custody.

33.     Creative Corrections, a corrections consulting firm, holds a contract with ICE to perform compliance inspections of ICE detention facilities and to conduct independent analyses of detainee death reviews.[27]

**Plaintiff's FOIA request**

34.     On August 1, 2025, Plaintiff Free submitted a FOIA request to ICE seeking "[a]ll records pertaining to the detention, care, death, and post-death inquiry" for Johnny Noviello, who died at the BOP-run Federal Detention Center Miami ('FDC Miami')."[28]

35.     Mr. Free sought expedited processing of his request, discussing the public's interest surrounding detained people's deaths in ICE custody.[29]

36.     ICE responded to Mr. Free's request on August 7, 2025. ICE acknowledged the request and assigned it a case number of 2025-ICFO-53004. In its

---

[27] *See Contracts*, CREATIVE CORRECTIONS, https://creativecorrections.com/contracts/ (last visited June 1, 2026).

[28] Plaintiff's request and correspondence with ICE are attached as Exhibit A, ICE FOIA Request.

[29] *Id.* at 3.

response, ICE invoked a 10-day extension to determine whether to comply with the request.[30]

37.     Though ICE has previously granted Mr. Free expedited processing for other requests about sentinel events like deaths in custody,[31] ICE never addressed Mr. Free's request for expedited processing.[32]

38.     After receiving no further response from ICE for three months, Mr. Free contacted ICE on November 5, 2025. He did not receive a response back from the agency.[33]

39.     After another three months passed with no response, Mr. Free followed up on his request with ICE again on February 3, 2026.[34]

40.     ICE replied to Mr. Free on February 4, 2026, with a determination letter stating that the information Mr. Free sought in his request was "withholdable in its entirety" under 5 U.S.C. § 552(b)(7)(A).[35]

41.     ICE's February 4, 2026, communication to Free contains no foreseeable harm statement.

---

[30] *Id.* at 4.

[31] *See, e.g.*, https://www.muckrock.com/foi/united-states-of-america-10/ihsc-sentinel-event-near-miss-records-186187/.

[32] Exhibit A at 4.

[33] *See id.* at 5.

[34] *See id.* at 6.

[35] ICE's determination letter to Plaintiff is attached as Exhibit B, ICE final determination letter.

42.     On February 5, 2026, Mr. Free appealed ICE's determination that his request related to law enforcement investigations that could lead to civil or criminal proceedings and further stated that even if there were such investigations, withholding the materials in their entirety violated the law.[36]

43.     ICE responded to Mr. Free's appeal on March 2, 2026. The agency acknowledged Mr. Free's appeal and assigned it case number 2026-ICAP-00253.[37]

44.     On March 25, 2026, ICE sent Mr. Free a letter notifying him that previously withheld information may be releasable to Mr. Free and that, in light of that determination, ICE remanded his request to the ICE FOIA Office for reprocessing.[38]

45.     Up to the date of this filing, Mr. Free has received no further communications from ICE regarding his FOIA request.

**ICE Detention Death Reviews and 7(A)**

46.     ICE's determination that the records responsive to Mr. Free's request were exempt from disclosure under Exemption 7(A) is an impermissible blanket withholding when considering the actual investigations underlying ICE Detainee Death Reviews.

---

[36] *See* Exhibit A at 7-8.

[37] *Id.* at 9-10.

[38] ICE's letter to Mr. Free is attached as Exhibit C, ICE reprocessing request letter.

14

47.     ICE Detainee Death Reviews are conducted pursuant to ICE Directive 11003.6 ("ICE Detainee Death Policy").[39]

48.     According to ICE's Detainee Death Policy, reviews are neither criminal nor civil in nature and make no findings of liability or wrongdoing. No administrative proceeding accompanies the conclusions attached to the investigation, which is non-adversarial in nature and lacks even a specific subject responsible and accountable for the conclusions.[40]

49.     Findings carry no automatic consequences for standards and policy violations, areas of concern, or other issues discovered during the reviews.[41]

50.     As such, it is presumptively unlikely that investigations into a detainee's death pursuant to ICE's Death Policy are compiled for "law enforcement purposes" since those purposes must attach criminal or civil penalties in accordance with the investigation's findings.[42]

**Plaintiff's FOIA Request to BOP**

---

[39] *See* ICE DIRECTIVE 11003.6: NOTIFICATION, REVIEW, AND REPORTING REQUIREMENTS FOR DETAINEE DEATHS, https://www.ice.gov/doclib/foia/policy/11003-6.pdf.

[40] *See id.* at ¶¶ 1-2 ("Purpose/Background"), ("Policy").

[41] *See id.* at ¶¶ 3.3, 3.5 ("Mortality Review"), ("Detainee Death Review).

[42] *See, e.g.*, *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51 (D.C. Cir. 2018) (quoting *Rural Housing Alliance v. United States Dep't of Agriculture*, 498 F.2d 73, 81 (D.C. Cir. 1974)) ("[t]o qualify as law-enforcement records, the documents must arise out of 'investigations which focus directly on specifically alleged illegal acts . . . which could, if proved, result in civil or criminal sanctions.'").

51.     On August 1, 2025, Plaintiff Free submitted a FOIA request to BOP seeking "[a]ll records pertaining to the detention, care, death, and post-death inquiry" for Johnny Noviello, who died at FDC Miami.[43]

52.     Mr. Free sought expedited processing of his request.[44] The BOP responded to Mr. Free by letter on August 12, 2025, granted the request expedited processing, and assigned the request a case number of 2025-06633. The agency additionally stated that processing the request could "take up to six months."[45]

53.     On September 11, 2025, Mr. Free followed up on his request. BOP replied back one day later on September 12, 2025, notifying Mr. Free that the agency was still searching for the records and that once the agency received the records, processing and releasing the records could take up to six months.[46]

54.     To date, Mr. Free has received no further responses from the agency.

55.     As of the date of this filing, BOP has not completed its search and review of records responsive to Plaintiff's request.

56.     As of the date of this filing, BOP has not taken action on Plaintiff's request that he can appeal.

---

[43] Plaintiff's request and correspondence with BOP are attached as Exhibit D, BOP FOIA Request.

[44] Exhibit D at 2-3.

[45] BOP's letter is attached as Exhibit E, BOP grant of expedited processing letter.

[46] Exhibit D at 4-5.

57.     As of the date of this filing, BOP has not indicated to Plaintiff which records it will produce and which records it seeks to withhold.

58.     As of the date of this filing, BOP has failed to make a determination on Plaintiff's request for records.

**Urgent Public Interest in Timely Disclosure of ICE Death Records**

59.     Deaths in ICE detention have reached an all-time high.

60.     Thirty people have passed away so far in ICE custody during Fiscal Year 2026, surpassing the previous record high of 29 acknowledged in-custody deaths during Fiscal Year 2004. Ten percent of all people to die in the agency's custody died in 2025—the highest total ever.

61.     As a result, the public's interest in the circumstances of people's deaths and the government's response to them has also reached a tipping point. Free cited the agency to seventy news articles about ICE deaths and the conditions that produced them in support of his request for expedited processing. Since he filed his request, the volume of in-depth coverage has only accelerated as ICE's detention death toll mounts.[47]

---

[47] *See, e.g.*, Isabela Dias, *Immigrants Are Dying in ICE Detention. A Key Watchdog Office Is Now Gone.*, MOTHER JONES (May 15, 2026), https://www.motherjones.com/politics/2026/05/how-the-trump-administration-gutted-immigration-detention-oversight/; Douglas MacMillian, *Internal ICE records reveal widespread use of force in detention centers*, WASH. POST (May 4, 2026), https://www.washingtonpost.com/business/2026/05/04/ice-detention-centers-force/; Camilo Montoya-Galvez, *ICE reports 18th detainee death in 4 months, putting agency on track for new record*, CBS NEWS (May 1, 2026), https://www.cbsnews.com/news/ice-detainee-deaths-2026/; Sergio Martínez-Beltrán et al., *Deaths of migrants in ICE custody hit record high under Trump*, NPR (Apr. 17, 2026), https://www.npr.org/2026/04/17/nx-s1-5789092/deaths-of-migrants-in-ice-

62.     Because of the public interest in these in-custody deaths, senior administration officials have faced questions from lawmakers and media about their numbers, causes, and efforts to mitigate conditions that allow people to die inside.

63.     For example, Tom Homan, who is reportedly functionally in charge of ICE's detention system, responded at length to a question from CBS News about the number of people dying inside and what efforts the administration is taking to reverse this trend. When the CBS interviewer asked Homan about the upward trend in immigration detention deaths, Homan replied that "[a] better question would be, 'Why is [*sic*] ICE deaths in custody far below any state prison, any federal prison? Why do we have the lowest death in custody of any state prison system or any federal incarceration system? Our deaths in custody are lower than everybody's. That's the first question you should be asking."[48]

custody-hit-record-high-under-trump; Armando Garcia & Laura Romero, *Death rates at ICE detention facilities raise concerns about health standards: Study*, ABC NEWS (Apr. 16, 2026), https://abcnews.com/US/death-rates-ice-detention-facilities-raise-concerns-health/story?id=132121020;  St. John Barned-Smith & Ko Lyn Cheang, *Inside ICE detention centers, medical misdiagnoses and delays prove deadly*, SF CHRONICLE (Apr. 9, 2026), https://www.sfchronicle.com/projects/2026/ice-detention-deaths/; Jazmine Ulloa et al., *Deaths in ICE Custody Are Growing. 'They Let Him Rot in There.'*, N.Y TIMES (Mar. 29, 2026), https://www.nytimes.com/2026/03/29/us/ice-detention-deaths-immigrants.html; Justin Glawe, *Record deaths in US immigration custody expose systemic failures*, THE GUARDIAN (Mar. 21, 2026), https://www.theguardian.com/us-news/2026/mar/21/ice-deaths-trump-administration; Douglas MacMillan, *ICE detention staff reported death of restrained man as a suicide*, WASH. POST (Jan. 23, 2026), https://www.washingtonpost.com/business/2026/01/23/ice-detainee-death-911-calls/.

[48] *See Extended Interview: Tom Homan Says ICE Embraced "Smarter" Deportation Tactics After Minneapolis*, CBS NEWS (May 5, 2026) (question and answer at 25:25),

64.     In December, DHS Spokesperson Tricia McLaughlin, responding on X to an X post by Senate Judiciary Ranking Member Richard Durbin, stated that ICE's death rate is the lowest it's been in years.[49]

65.     These claims are provably false. According to a study in the Journal of the American Medical Association, a person's chances of dying in ICE detention, *i.e.*, the system's mortality rate, are the highest they've been in two decades—and exponentially higher than in the immediate past.

66.     Compounding the problem created by defending its record with statistically false claims masked as "Fact Checks" is the administration's drastic scaling back of the information it provides about each death, electing instead to characterize the departed as "criminal aliens" wherever possible, thus inviting the public to devalue their lives and memories, even where ICE itself possesses no record that the decedent was convicted of a crime.[50]

---

https://www.cbsnews.com/video/extended-interview-tom-homan-says-ice-embraced-smarter-deportation-tactics-after-minneapolis/.

[49] *See* Tricia McLaughlin (@TriciaOhio), X (Dec. 20, 2025), https://x.com/TriciaOhio/status/2002467615294300639?ref_src=twsrc%5Etfw%7Ctwcamp%5Etweetembed%7Ctwterm%5E2002467615294300639%7Ctwgr%5E70729c7a7147155a5b87d5e53e21bab94c49fd21%7Ctwcon%5Es1_&ref_url=https%3A%2F%2Fwww.foxnews.com%2Fpolitics%2Fdhs-fires-back-senate-dems-ice-detainee-death-claims-trying-twist-data.

[50] *See, e.g.*, *ICE criminal illegal alien detainee from Cuba passes away in Miami*, IMMIGR.& CUSTOMS ENF'T (Apr. 16, 2026), https://www.ice.gov/news/releases/ice-criminal-illegal-alien-detainee-cuba-passes-away-miami; *Criminal illegal alien from Mexico passes away at Glades County Detention Facility*, IMMIGR.& CUSTOMS ENF'T (Mar. 18, 2026), https://www.ice.gov/news/releases/criminal-illegal-alien-mexico-passes-away-glades-county-detention-facility; *Criminal illegal alien from Afghanistan with previous arrests for fraud and theft passes away at Texas hospital*, IMMIGR.& CUSTOMS ENF'T (Mar. 18, 2026),

19

67.     Given this admission, subjecting immigrants like Mr. Noviello to the higher mortality rates in the federal prison system represents a conscious choice by federal officials to afford some immigrants in nominally civil detention a better chance at survival than others. As reported in Julia Ainsley's book, *Undue Process*, this conscious choice by federal officials is explicitly aimed at striking enough fear into the immigrant community through rising spectacles of in-custody deaths and harms that many elect to simply self-deport.[51] That objective, like the facility where Noviello died, is punitive in nature and not a legally recognized purpose or power of ICE detention.

68.     Timely access to primary source documents shedding light on the government's own findings about whether deaths were preventable and its subsequent response or inaction is vital to arming the governed with the information necessary to hold the government accountable.

69.     Within this context, ICE's functional embargo of all death records for many months, and often years, serves to prop up false and misleading narratives about the conditions people face inside and what the agency is doing to ensure it lives up to its obligations under the Constitution and laws of the United States.

---

https://www.ice.gov/news/releases/criminal-illegal-alien-afghanistan-previous-arrests-fraud-and-theft-passes-away-texas.

[51] JULIA AINSLEY, UNDUE PROCESS: THE INSIDE STORY OF TRUMP'S MASS DEPORTATION PROGRAM (Harper 2026).

70. ICE currently contends it is operating its detention system under funding authorized and appropriated by the One Big Beautiful Bill Act (OB3).

71. But it also claims the rest of its functions are hampered by the ongoing lapse in federal appropriations that followed the death of two American citizens in Minneapolis by homicide at the hands of DHS agents.

72. One of the very few conditions limiting DHS's expenditure of funds is that its detention expenditures will be subject to standards set by the Secretary of Homeland Security, consistent with applicable laws.

73. The standards ICE has set require people to file FOIA requests to obtain information about deaths in ICE detention, as they must under applicable law.

74. Consequently, FOIA and OB3 require ICE to use OB3 funds to ensure the agency responds in a timely manner to FOIA requests about deaths in ICE detention, lest the standards set by the Secretary pursuant to OB3 exceed her authority under applicable law.

**CLAIMS FOR RELIEF**

**COUNT I**
**FAILURE TO MAKE A DETERMINATION**
**VIOLATION OF 5 U.S.C. § 552 BY BOP**

75. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

76.     FOIA requires an agency to make a determination within a maximum of 30 working days under *Citizens for Responsibility and Ethics in Washington v. Federal Election Commission.*[52]

77.     "[I]n order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse."[53]

78.     The BOP has failed to make a determination as to the Plaintiff's FOIA request.

## COUNT II
### FAILURE TO ESTIMATE A DATE OF PRODUCTION
### VIOLATION OF 5 U.S.C. § 552(a)(7)(B)(ii) BY BOP

79.     Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

80.     Defendant must establish a telephone line or internet service to provide an estimated date on which the agencies will complete action on the request.

---

[52] *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3rd 180 (D.C. Cir. 2013) (Kavanaugh, J.).

[53] *Citizens for Responsibility & Ethics in Wash.*, 711 F.3rd at 188.

81.     In violation of this statute, Defendant failed to provide an estimated date on which the requests would be completed.

## COUNT III
## FAILURE TO MAKE REASONABLY SEGREGABLE, NON-EXEMPT RECORDS PROMPTLY AVAILABLE
## VIOLATION OF 5 U.S.C. § 552(a)(3) BY BOP

82.     Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

83.     Upon request, an "agency . . . shall make the records promptly available to any person." [54]

84.     Defendant has violated this provision by failing to make records responsive to Plaintiff's requests "promptly available."

## COUNT IV
## VIOLATION OF 5 U.S.C. § 552(a)(4)(B)
## UNLAWFUL WITHHOLDING OF AGENCY RECORDS BY BOP

85.     Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

86.     The BOP is a government agency subject to the FOIA and must therefore make reasonable efforts to search for and release requested records and otherwise lawfully support and provide the basis for any withholdings made pursuant to the exemptions provided by the FOIA.

---

[54] 5 U.S.C. § 552(a)(3)(A).

87. Plaintiff has a legal right under the FOIA to the timely search and release of responsive, non-exempt agency records responsive to the Plaintiff's FOIA requests.

88. BOP failed to conduct a timely search and release responsive, non-exempt agency records in response to the Plaintiff's FOIA requests.

**COUNT V**
**WRONGFUL WITHHOLDING OF RECORDS**
**VIOLATION OF 5 U.S.C. § 552(a)(3)(A) BY ICE**

89. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

90. Defendant ICE is wrongly withholding agency records by failing to produce non-exempt records responsive to Plaintiff's FOIA request and by failing to segregate and produce non-exempt records responsive to Plaintiff's FOIA request.

91. Defendant ICE is obligated under 5 U.S.C. § 552(a)(3)(A) to promptly produce records responsive to the Plaintiff's FOIA request.

92. Plaintiff has a legal right to obtain such records, and no legal basis exists for Defendant's failure to disclose them.

93. Defendant ICE's failure to disclose all responsive records violates its statutory obligations under 5 U.S.C. § 552(a) to make requested records promptly available to the public.

**COUNT VI**
**VIOLATION OF 5 U.S.C. § 552(a)(4)(B)**
**UNLAWFUL WITHHOLDING OF AGENCY RECORDS BY ICE**

94. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

95.     ICE is a government agency subject to FOIA and must therefore make reasonable efforts to search for and release requested records and otherwise lawfully support and provide the basis for any withholdings made pursuant to the exemptions provided by FOIA.

96.     Plaintiff has a legal right under FOIA to the timely search and release of responsive, non-exempt agency records responsive to the Plaintiff's FOIA requests.

97.     ICE failed to conduct a timely search and release responsive, non-exempt agency records in response to the Plaintiff's FOIA requests.

**COUNT VII**
**FAILURE TO COMPLY WITH FOIA'S**
**AFFIRMATIVE DISCLOSURE PROVISIONS**

98.     Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

99.     FOIA requires that each agency "shall make available for public inspection in an electronic format . . . copies of all records, regardless of form or format–that have been released to any person under paragraph (3); and that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; or that have been requested 3 or more times . . . ."

100.    Defendant has violated 5 U.S.C. § 552(a)(2)(D), et seq. by failing to make available to the public records responsive to Plaintiff's request regarding Johnny Noviello's Death Review.

25

## COUNT VIII
## PATTERN AND PRACTICE OF VIOLATION OF AFFIRMATIVE DISCLOSURE REQUIREMENTS BY ICE

101.   Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

102.   Under FOIA, agencies have a duty to proactively disclose to the public certain commonly requested or likely to be requested records.[55]

103.   ICE has a pattern and practice of violating its proactive disclosure requirements under FOIA.

## COUNT IX
## PATTERN AND PRACTICE OF VIOLATION OF TIME LIMITS BY ICE

104.   Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

105.   Defendant ICE has established a pattern and practice of violating statutory time limits of FOIA requests.

106.   Courts have previously granted judgment as a matter of law to the family member of someone who died in ICE custody, explaining that promptly available "typically would mean within days or a few weeks of a 'determination,' not months or years."[56]

---

[55] *See* 5 U.S.C. § 552(a)(2)(D).

[56] *Sierra Club*, 2018 WL 10419238 at *5 (N.D. Cal. Dec. 26, 2018) (quoting *Citizens for Responsibility & Ethics in Wash.*, 711 F.3d at 188); *Owen v. U.S. Immigr. & Customs Enf't*, 2023 WL 9470904, at *6 (C.D. Cal. Jan. 12, 2023).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. enter judgment on all counts in favor of Plaintiff and against Defendants;

2. declare Defendants' withholdings under the FOIA unlawful and enjoin Defendants from continuing to withhold all non-exempt records responsive to the FOIA Requests;

3. declare Defendant ICE's failure to proactively disclose Mr. Noviello's Death Review records under the FOIA to be unlawful;

4. declare that Defendant ICE has a pattern and practice of failing to adhere to FOIA's proactive disclosure requirements;

5. declare that Defendants BOP and ICE have a pattern and practice of violating FOIA time limits;

6. order Defendant ICE to proactively produce and make available to the public all records responsive to Mr. Noviello's Death Review;

7. order Defendants to produce, within 20 days of the Court's order, or by such other date as the Court deems appropriate, all non-exempt records responsive to the FOIA Requests, all segregable records responsive to the FOIA Requests, and indices justifying the withholding of any responsive records withheld under any claim of exemption;

8. award Plaintiff reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d)(1)(A); and

9. award Plaintiff such further relief as the Court deems just, equitable, and appropriate.

Dated: June 9, 2026

Respectfully submitted,


/s/ Edward F. Ramos
EDWARD F. RAMOS
Florida Bar No. 98747
eramos@kktplaw.com

IRA J. KURZBAN
Florida Bar No. 225517
ira@kktplaw.com

KURZBAN KURZBAN
TETZELI & PRATT, P.A.

131 Madeira Avenue
Coral Gables, Florida 33134
Tel:    (305) 444-0060
Fax:    (305) 444-3503


By:  /s/ *Daniel Melo*
       Daniel Melo*

The Melo Law Firm
2920 Forestville Road
Ste 100, PMB 1192
Raleigh, NC 27616
(919) 348-9213
dan@themelolawfirm.com
*Pro Hac Vice application forthcoming*


By:  /s/ *Emily Burns*
       Emily Burns *

The Melo Law Firm
2920 Forestville Road
Ste 100, PMB 1192
Raleigh, NC 27616
(919) 348-9213
emily@themelolawfirm.com
*Pro Hac Vice application forthcoming*

By: /s/ *Lara S. Nochomovitz*
     Lara S. Nochomovitz**

LSN Legal LLC
118 Partridge Lane
Chagrin Falls, OH 4422
OH Bar # 0096131
New York First Division # 5452602
*Pro Hac Vice application forthcoming*

29